IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY MACK MILLER, JR., § | | |
| TDCJ #1441638, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-09-2455 |
| § | | |
| TROY FOX, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

State inmate Roy Mack Miller, Jr. (TDCJ #1441638) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with an adverse parole determination. Miller appears *pro se* and he has been granted leave to proceed *in forma pauperis*. At the Court's request, Miller has provided a more definite statement of his claims. (Docket No. 13). After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court concludes that this case must be **dismissed** for reasons that follow.

### I.     BACKGROUND

Miller is currently incarcerated at the Terrell Unit in Rosharon. He was admitted to TDCJ in July of 2007 as the result of a conviction for manslaughter in Comal County cause number 2006-233. Miller received an eleven-year prison sentence in that case.

Miller does not challenge his conviction or his sentence here. Instead, his complaint stems from an adverse decision made by a panel of the Texas Board of

Pardons and Paroles. Miller sues Troy Fox, who serves as an Administrator of the Texas Board of Pardons and Paroles. Miller also sues TDCJ Executive Director Brad Livingston, and the entire "voting panel" of parole officials who denied his recent application for the form of parole known as Medically Recommended Intensive Supervision or "MRIS."[1]

Miller reports that he has a history of heart and lung disease. Miller states that he had his "first" heart attack in July of 1990. In 1998, Miller underwent triple by-pass surgery. Miller had a second heart attack at the Byrd Unit in December of 2007, and a third heart attack at the Clements Unit in January of 2008. According to Miller, several prison physicians have diagnosed congestive heart failure. Miller also reportedly suffers from chronic lung disease and peripheral artery disease that has caused neuropathy in

---

[1] There are two ways in which a state prisoner becomes eligible for early release from confinement in Texas. The first is by "parole" and the second is by release on "mandatory supervision." Under Texas law, "parole" is "the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(6) (Vernon 2004). By contrast, "mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5). Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007). Miller indicates that he is eligible for early release on mandatory supervision, but he does not provide a date for his projected release. In this case, Miller seeks his release on MRIS parole, which is a program for prisoners with special needs that is governed by § 508.146 of the Texas Government Code.

both of his feet. In September of 2009, Miller received a defibrillator implant, which supplies an electric shock to restore the rhythm of his heart.

Pointing to his chronic medical conditions, Miller contends that he is eligible for early release from prison on MRIS parole, which is for prisoners suffering from "terminal" ailments. On January 30, 2008, health care personnel at his prison unit of assignment applied for MRIS parole on Miller's behalf. Miller complains that his application was denied, however, because the parole panel found that his release would constitute a threat to public safety. Miller disagrees and argues that there is "no evidence" showing that he poses a threat to the public.

In his pending complaint, Miller contends that the parol panel erred by denying his MRIS parole application because, once an inmate has been recommended for special needs parole by a physician, the Texas Board of Pardons and Paroles has no discretion and must release him under the governing statute found at § 508.146 of the Texas Government Code. Emphasizing that he has been diagnosed with chronic medical ailments and recommended for MRIS parole by his physicians, Miller contends that he has been denied release from prison in violation of his constitutional right to due process. Miller seeks injunctive relief in the form of his immediate release from prison on MRIS parole. The Court concludes, however, that Miller's complaint must be dismissed for reasons discussed below.

## II.     STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*.  28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  A

review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)).  Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Of course, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle*[ *v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.   DISCUSSION

In support of his claim, Miller points to the Texas statute that governs Medically Recommended Intensive Supervision or "MRIS" parole, and argues that the defendants are required to release him from prison because of his chronic medical condition.  The Texas MRIS statute provides that, subject to certain exceptions, inmates "*may* be released

on medically recommended intensive supervision on a date designated by a parole panel" if the following criteria are met:

> (1) the Texas Correctional Office on Offenders with Medical or Mental Impairments, in cooperation with the Correctional Managed Health Care Committee, identifies the inmate as being:
>
>> (A) elderly, physically disabled, mentally ill, terminally ill, or mentally retarded or having a condition requiring long-term care, if the inmate is an inmate with an instant offense that is described in Section 3g, Article 42.12, Code of Criminal Procedure; or
>>
>> (B) in a persistent vegetative state or being a person with an organic brain syndrome with significant to total mobility impairment, if the inmate is an inmate who has a reportable conviction or adjudication under Chapter 62, Code of Criminal Procedure;
>
> (2) the parole panel determines that, based on the inmate's condition and a medical evaluation, the inmate does not constitute a threat to public safety; and
>
> (3) the Texas Correctional Office on Offenders with Medical or Mental Impairments, in cooperation with the pardons and paroles division, has prepared for the inmate a medically recommended intensive supervision plan that requires the inmate to submit to electronic monitoring, places the inmate on super-intensive supervision, or otherwise ensures appropriate supervision of the inmate.

TEX. GOV'T CODE § 508.146(a). Noting that physicians have diagnosed congestive heart failure and other chronic ailments, Miller maintains that the parole panel erred by determining that he constitutes a threat to public safety. Miller reasons, therefore, that

the parole panel's decision violates the Due Process Clause found in the Fourteenth Amendment.

Miller's allegations fail to articulate a violation of the Due Process Clause. In that respect, it is well established that "[t]he protections of the Due Process Clause are only invoked when State procedures which may produce erroneous or unreliable results imperil a protected liberty or property interest." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) (citing *Olim v. Wakinekona*, 451 U.S. 238, 250-51 (1983); *Jago v. Van Curen*, 454 U.S. 14, 16-18 (1981); *Meachum v. Fano*, 427 U.S. 215, 223-25 (1976); *Jay v. Boyd*, 351 U.S. 345, 352-61 (1956)). The United States Supreme Court has recognized that the several states have no duty to establish a parole system and that there is no constitutional right to be released on parole before the expiration of a valid sentence. *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987) (explaining that "statutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest"); *see also Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11 (1979) (holding that a statute which "provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process"). In light of this authority, the Fifth Circuit has recognized repeatedly that the Texas parole statutes create no constitutional right to release on parole because they encourage no expectancy of early release.[2] *Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir. 1981) (holding that the Texas

---

[2]   The Texas Court of Criminal Appeals has also held that, in contrast to inmates who are eligible for early release on mandatory supervision, state prison inmates have no

parole statutes do not create a protectable expectancy of release, but rather create nothing more than a hope of parole); *Gilbertson v. Texas Board of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993) (same); *Creel v. Keene*, 928 F.2d 707, 712 (5th Cir. 1991) (same). Therefore, it is settled that state prisoners in Texas "have no protected liberty interest in parole." *Johnson*, 110 F.3d at 308. As a result, allegations such as those raised by Miller, which merely protest the denial of parole without due process, "simply do not assert a federal constitutional violation." *Id.*

Because the decision whether to release an inmate to MRIS is entirely within the Parole Board's discretion, a Texas prisoner has no constitutionally protected interest in release on MRIS or special needs parole. *See* TEX. GOV'T CODE § 508.146(a); *Allison v. Kyle*, 66 F.3d 71, 73-74 (1995); *see also Barker v. Owens*, 277 Fed. App'x 482, 2008 WL 1983782 (5th Cir. May 8, 2008) (unpublished) (agreeing that a Texas inmate's requests for declaratory and injunctive relief fail to state a claim because the decision whether to release an inmate to MRIS is entirely within the parole board's discretion). Having no constitutionally protected right to parole, an inmate cannot state "a claim for either civil rights or habeas relief by his allegation that he was denied due process [when seeking special needs parole] because he has no constitutionally protected expectancy of release." *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985)). Miller

---

protected liberty interest in parole. *See Ex parte Retzlaff*, 135 S.W.3d 45 (Tex. Crim. App. 2004) (distinguishing parole, "which does not entail a statutorily vested liberty interest," from mandatory supervision); *see also Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000) (noting that while the parole system in Texas creates no presumption of release on parole, the mandatory supervision statute does).

appears to complain that the procedures employed were inadequate in his case. However, the Fifth Circuit has emphasized that allegations of this sort, without more, simply do not assert a federal constitutional violation. *Johnson*, 110 F.3d at 308. "[I]n the absence of a cognizable liberty interest, a state prisoner cannot challenge parole procedures under the Due Process Clause." *Id*. at 309 n.13.

### IV. <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** that he plaintiff's complaint is **DISMISSED** with prejudice for failure to state a valid claim for purposes of 28 U.S.C. § 1915(e)(2)(B).

**The Clerk is directed to provide a copy of this order to the parties. The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and (2) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas this 2nd day of February, 2010.

_____
Kenneth M. Hoyt
United States District Judge