IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY MACK MILLER, JR., § | | |
| TDCJ #1441638, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-09-2455 |
| § | | |
| TROY FOX, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

State inmate Roy Mack Miller, Jr. (TDCJ #1441638) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights regarding his early release from prison onto parole. Miller, who proceeds *pro se* and *in forma pauperis*, has provided more than one supplement to his claims. The defendants have filed a motion for summary judgment, arguing that Miller's complaint fails as a matter of law and must be dismissed. (Docket No. 23). Miller has filed a response and a motion for sanctions against the defendants. (Docket Nos. 28, 29). The defendants have filed a reply. (Docket No. 30). After considering all of the pleadings, and the applicable law, the Court grants the defendants' motion for summary judgment and dismisses this case for reasons that follow.

### I.   BACKGROUND AND PROCEDURAL HISTORY

The underlying facts of this case have been set forth in a Memorandum and Order entered on February 2, 2010, and will not be repeated in full here. (Docket No. 15). To

resolve the pending motion, it is sufficient to note that Miller is currently incarcerated at the Terrell Unit in Rosharon as the result of a 2007 felon conviction for manslaughter in Comal County cause number 2006-233. Miller received an eleven-year prison sentence in that case.

Miller does not challenge his conviction or the sentence imposed by the trial court. Instead, as outlined in the Court's previous order, Miller complains that he has been wrongfully denied early release from prison in spite of his request under the Medically Recommended Intensive Supervision Program or "MRIS," which is governed by § 508.146(a) of the Texas Government Code.[1] Miller reports that he has a history of heart and lung disease. Miller claims that, on January 30, 2008, health care personnel at his prison unit of assignment applied for MRIS parole on Miller's behalf. Emphasizing that he has been diagnosed with chronic medical ailments and recommended for MRIS parole

---

[1] There are two ways in which a state prisoner becomes eligible for early release from confinement in Texas. The first is by "parole" and the second is by release on "mandatory supervision." Under Texas law, "parole" is "the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(6) (Vernon 2004). By contrast, "mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5). Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007). Miller indicates that he is eligible for early release on mandatory supervision, but he does not provide a date for his projected release. In this case, Miller seeks his release on MRIS parole, which is governed by § 508.146 of the Texas Government Code.

by his physicians, Miller insists that he has been denied release from prison in violation of his constitutional right to due process.

Miller filed this civil rights complaint primarily against Troy Fox, who serves as an Administrator of the Texas Board of Pardons and Paroles. Miller also sues TDCJ Executive Director Brad Livingston, and the entire "voting panel" of parole officials who reportedly denied him release on MRIS parole. Miller seeks injunctive relief in the form of his immediate release from prison on MRIS parole.

After considering all of the pleadings, as supplemented by Miller's more definite statement, the Court dismissed the complaint for failure to state a claim because, according to well-settled precedent, there is no legal right to attain parole in Texas. (Docket No. 15). Miller has not shown otherwise and he has not demonstrated that the dismissal order was incorrect. On May 3, 2010, however, the Court granted Miller's motion to reopen this case for the limited purpose of considering Miller's allegation that he was actually *granted* early release on MRIS parole in August of 2008, but that his parole was revoked for arbitrary reasons, without a hearing or explanation. The defendants have filed a motion for summary judgment, asserting that Miller was never granted any form of parole and that this allegation is completely without merit. Miller disagrees. The parties' contentions are addressed briefly below under the governing standard of review.

## II.     STANDARD OF REVIEW

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, a reviewing court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving

party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co*., 478 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or

5

"unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).   Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, a reviewing court will not assume "that the non-moving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075) (emphasis in original).

   The Court acknowledges that the plaintiff proceeds *pro se* in this instance.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See id*; *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  However, it is well established that "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.  DISCUSSION

Miller insists that he was granted MRIS parole in August of 2008, but that officials revoked that decision and have wrongfully refused to release him from prison. As proof that he was granted MRIS parole, Miller notes that he was transferred from the Terrell Unit to the Huntsville Unit in August 2008.  (Docket No. 18).  Miller reports that he was given a housing slip marked "MRIS" at the Huntsville Unit.  Miller interpreted this housing slip to mean that he would be released on MRIS parole.  Shortly after he arrived at the Huntsville Unit, however, Miller was returned to the Terrell Unit.  Miller was reportedly told that he had been transferred to Huntsville too soon because his "parole date" was not until September of 2008, and that he was being returned to the Terrell Unit because of his medical restrictions.  Miller complains that he was not returned to the Huntsville Unit for release in September of 2008, as he was allegedly informed.  By refusing to release him, Miller reasons that officials must have revoked his parole without giving an explanation.

As noted previously, state prisoners have no constitutional right to be released on parole before the expiration of a valid sentence.  *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987) (explaining that "statutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest"); *see also Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11 (1979) (holding that a statute which "provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process").  The Fifth Circuit has recognized repeatedly that the

Texas parole statutes create no constitutional right to release on parole because they encourage no expectancy of early release.[2] *Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir. 1981) (holding that the Texas parole statutes do not create a protectable expectancy of release, but rather create nothing more than a hope of parole); *Gilbertson v. Texas Board of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993) (same); *Creel v. Keene*, 928 F.2d 707, 712 (5th Cir. 1991) (same). Therefore, Miller's primary complaint that he has been denied parole without due process does not assert a federal constitutional violation and is not actionable. *See Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985).

To the extent that Miller claims that he was granted parole, it is equally well established that a prisoner's supervised release cannot be revoked without some form of due process. In that respect, the Supreme Court has held that the Due Process Clause requires certain minimal safeguards to protect the limited liberty interest at stake in a parole revocation proceeding, including:

    (1)    written notice of the alleged parole violations,

    (2)    disclosure of the evidence against him,

        (3)    an opportunity to be heard personally and to present evidence,

---

[2] The Texas Court of Criminal Appeals has also held that, in contrast to inmates who are eligible for early release on mandatory supervision, state prison inmates have no protected liberty interest in parole. *See Ex parte Retzlaff*, 135 S.W.3d 45 (Tex. Crim. App. 2004) (distinguishing parole, "which does not entail a statutorily vested liberty interest," from mandatory supervision); *see also Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000) (noting that while the parole system in Texas creates no presumption of release on parole, the mandatory supervision statute does).

>   (4)   "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation),"
>
>   (5)   a hearing before a neutral and detached body, and
>
>   (6)   a written statement by the fact finders describing the evidence reviewed and the reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). In this instance, Miller appears to claim that, after he was granted MRIS parole and transferred to the Huntsville Unit in August of 2008, his parole was revoked without the necessary due process.

The defendants maintain that Miller cannot show that his parole was revoked without due process because he was never granted parole in the first place. In support of their motion for summary judgment, the defendants have provided Miller's parole file. (Docket No. 24, Exhibit B) (under seal).[3] These records confirm that, after he was sentenced to TDCJ in 2007, Miller's physicians did recommend him for consideration by parole officials for early release on MRIS parole. The initial recommendation was not made, however, until September 26, 2008. (*Id.* at 38). Miller was interviewed for MRIS parole on October 9, 2008. The parole board considered the recommendation on December 31, 2008, but elected to deny release on January 13, 2009. (*Id.* at 36). Thereafter, on April 14, 2009, the parole board denied a second request for MRIS parole on Miller's behalf. (*Id.* at 7). These records show that, when Miller was transferred to

---

[3] This exhibit was filed under seal because it contains medical records.

Huntsville in August of 2008, he had not yet been reviewed for MRIS parole and no other form of parole had been approved.

In response to the summary judgment motion, Miller maintains that his transfer to the Huntsville Unit in August of 2008 is proof enough that he was granted parole. In support of this argument, Miller notes that he was transferred to the Huntsville Unit on a bus that was filled with other inmates "who were going to Huntsville for parole and only parole." (Docket No. 29, at 4). Miller claims that "some of the guards" told him that he was being transferred for the purpose of being paroled. (*Id.*).

The defendants do not dispute that Miller was transferred to the Huntsville Unit in August of 2008. (Docket No. 30). The defendants note, however, that Miller has been transferred a number of times for various reasons, none of which were related to a parole decision. As Miller concedes in his response, he has been transferred "on many occasions." (Docket No. 29, Affidavit, at ¶ 4). Miller provides no evidence, however, to establish that he was approved for parole. His allegations to the contrary, which rest on speculation and hearsay information relayed by unidentified guards, are not sufficient to rebut the defendants' summary judgment motion. Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment

where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000); *see also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005).

The record demonstrates that Miller has not been granted release on parole and, therefore, his parole was not revoked without the requisite safeguards guaranteed by the Due Process Clause. Miller does not show otherwise and his conclusory allegations are not sufficient to raise a genuine issue of material fact. Accordingly, the defendants are entitled to summary judgment.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Docket No. 23) is **GRANTED**.

2. The plaintiff's motion for sanctions (Docket No. 28) is **DENIED**.

3. The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas this 31st day of August, 2010.

_____
Kenneth M. Hoyt
United States District Judge